## Harrison Dills

*v.*

## Alexander Stobie *et al.*

1. Landlord and tenant—*surrender of lease by accepting new tenant.* Where it is mutually agreed between parties that a lease shall be surrendered, and a new one is thereupon made with another party, and the landlord accepts the new party as his tenant, this will estop the landlord from afterwards denying the surrender of the first lease, notwithstanding it was in writing and under seal, and the agreement to surrender was verbal.

2. An actual and continued change of possession, by the mutual consent of the parties, will amount to a surrender of a written lease, by operation of law.

3. Where certain parties procured a written lease of certain rooms, as trustees of a Good Templars' lodge, and they were occupied by the lodge of whom the lessees were trustees and two other lodges, and the last two afterwards ceased to use the rooms, whereupon the lessees notified the lessor that the lodge they represented would be compelled to vacate the premises, and the lessor then offered to reduce the rent, and the lodge accepted the rooms at the reduced rent, which it continued to pay for some time: *Held*, that this was evidence of the surrender of the original lease to the trustees, and of a new leasing to the lodge.

4. SAME—*payment of rent.* Where a lodge, on terminating its lease of rooms, left property therein greatly exceeding in value the rent due, and offered the same to the lessor in payment, and he took time to consider whether he would accept the same, and retained the same, giving no notice that he would not accept it in payment for some considerable time, so that the lodge might have made some other disposition of the property: *Held*, that his silence implied assent, and justified the jury in finding a payment of the rent.

5. SAME—*acceptance of surrender of lease.* If the lessee of rooms, before the expiration of the term, abandons the premises, delivers the key to the lessor's agent, and notifies the lessor of the fact by letter, and he in reply to the letter makes no objection, but retains the key, this will be sufficient evidence to authorize a jury in finding a termination of the tenancy.

6. PLEADING—*effect of protestation.* The only effect of a protestation in a pleading is, that in case the party making it succeeds in the point to be tried, he thereby saves himself the liberty of disputing *in any other suit*, the truth of the allegation which is protested against.

7. SAME—*admission from, conclusive.* An admission by the pleading concludes the party pleading, in the particular suit, though made with a protestation.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an action of covenant, brought by the appellant against the appellees, upon a written lease, to recover rent for a certain hall in the city of Quincy.

The fourth plea, referred to in the opinion, was a plea of payment of the rent, and the replication thereto is as follows: " *Precludi non*, because protesting that he, the said plaintiff, has never been paid by the said defendants, or any other person or persons whatsoever, any sum or sums of money in full satisfaction of the money in said indenture mentioned, and in said declaration alleged to be due to him, the said plaintiff,

from the said defendants, for rent, use and occupation of the said premises in the said indenture mentioned, as is in the said plea alleged and set forth, as for the losses and damages he had or might sustain or suffer by means of the breach of the said covenant, by them, the said defendants, and, for plea, says that he did not accept the said sum or sums of money by them, the said defendants, in their said plea mentioned, in full satisfaction and discharge of all the damages caused and rights of action as in the said declaration mentioned and set forth, as the said defendants have in their said plea alleged, and this he prays may be inquired of by the country," etc.

A trial was had, resulting in a verdict and judgment for the defendants, and the plaintiff brings the record to this court by appeal.

Mr. GEORGE W. FOGG, for the appellant.

Mr. IRA M. MOORE, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 1st day of January, 1867, appellant leased to appellees certain rooms owned by him in Quincy, at a rent of $300 per annum, payable in equal monthly installments, until the 1st day of January, 1872. The rooms were occupied by a Good Templars' lodge, of which appellees were trustees, and also by two other lodges of the same order.

Afterwards, late in the fall or early in the winter of 1868, one of these lodges became disorganized, and the other gave notice that it would cease to occupy the rooms jointly with the lodge for which appellees were acting. It then became apparent that the latter lodge could not pay the rent, and of this appellant was notified, and that the lodge would be compelled to vacate the premises. He then offered to Vandoorn to reduce the rent to $200, but he, not being an officer of the lodge, or authorized to act, reported to the lodge, and, afterwards, Long, Vandoorn and appellant having met, Long, as chairman of the trustees of the lodge, agreed that the lodge should remain, and that it would pay $200 annually for the rent of the

rooms, in monthly installments.   This was a verbal agreement, but the lodge remained in possession of the premises until the 30th day of October, 1869.

Appellant made out his accounts for the rent in the name of and against the lodge, and they were paid by it.   It nowhere appears that after this verbal agreement was entered into appellant claimed or demanded any rent from appellees. Subsequently, and after all the installments of the accrued rent had been paid, but for one month, Long surrendered the key of the hall to Brooker, in whose storeroom appellant had his office, and who sometimes transacted his business; and, he, being absent in Missouri at the time, was notified by letter that the lodge could not longer keep the rooms and pay the rent.   At this time the lodge removed from the rooms all its furniture and property, except some platforms, etc., which Long, on appellant's return, offered him in payment of the rent then remaining due.   It seems that appellant kept the key, and made no reply to the proposal that he should take the platforms, other than that he would look at them and see what they were worth.

This action was afterwards brought on the original lease. Trial was had before the court and a jury, resulting in a verdict for the defendants, and, on overruling motion for a new trial, judgment was rendered on the verdict, and this appeal was prayed and perfected by the plaintiff.

The chief ground of defense insisted on by appellees is, that the old lease was surrendered and a new one made, whereby the lodge of Good Templars became tenant to appellant in the place of appellees.

Where it is mutually agreed between parties that a lease shall be surrendered, and a new one is thereupon made with another party, and the landlord accepts the new party as his tenant, this will estop the landlord thereafter from denying the surrender of the first lease, notwithstanding it was in writing under seal, and the agreement to surrender was verbal.   *Baker* v. *Pratt*, 15 Ill. 568; see, also, Taylor on Landlord and Tenant, §§ 514, 515, and authorities there cited.   And it is

said, in the authority last cited, " An actual and continued change of possession, by the mutual consent of the parties, will amount to a surrender by operation of law."

The jury have, on the evidence adduced on the trial, found that there was a surrender by appellees to appellant of the lease held by them, or such acquiescence on the part of appellant as is equivalent to a surrender, and a new leasing by him to the lodge.

This was a question of fact entirely within their province, and we are unable to say their finding is so palpably contrary to the evidence as to justify us in setting it aside.

Vandoorn testified that he notified appellant that the lodge would have to vacate the rooms, in consequence of its inability to pay the rent; that appellant then agreed the lodge might have the rooms at $200 per annum. He also testified that he notified appellant that Long was chairman of the trustees of the lodge and authorized to act for it. Both he and Long testified to a new leasing from appellant to the lodge, at $200 per year. Appellant, while admitting that he agreed to reduce the rent, denies that he thereby made a new lease, or otherwise changed the old one than as to the amount of the rent. His misfortune, however, is, we are unable to say that the preponderance is with him in this respect. We can not know, from anything before us, that he is entitled to more credit than either Vandoorn or Long. There are two witnesses against him, both positive that he agreed to a new leasing to the lodge. Moreover, he subsequently made out his accounts for rent against, and received payment from the lodge; and there is no evidence that he made any further claim for rent on appellees. From all the evidence, therefore, it is impossible to say the inference is not reasonable, that appellant accepted the lodge as his tenant, instead of appellees. That the lodge was in possession under the old as well as the new lease, does not necessarily militate against this position. If appellees, whilst tenants to appellant, let the lodge occupy the premises, it was not necessary that it should formally vacate them and re-enter under the new lease, to make it tenant in the place of appellees.

The law requires no such useless form and ceremony; but it was sufficient if all the parties agreed that the lodge should become tenant to appellant, and it thereafter occupied the premises and was acknowledged by appellant to be his tenant.

The fact that there was a new lease being found by the jury, upon sufficient evidence, it follows, if it was to the lodge, and not to appellees, then appellees are liable for no rent accruing after that time; and the evidence satisfactorily shows there is none due for rent before. If, however, we shall assume the evidence shows the new lease was to the appellees, as was the old, and not to the lodge, the evidence preponderates that all the rent due was paid up to the 1st of October, 1869. Appellant was notified by letter of November 1st of that year, that the lodge had vacated the rooms and removed its property therefrom, with the exception of its platforms, and that the key had been delivered to his agent, Mr. Brooker. Although he replied to this letter, he made no objection to the surrender, but retained the key, which placed the possession of the rooms entirely under his control. Assuming, as we are inclined to think the jury might, this to be sufficient evidence of the termination of the tenancy, there would be but one month's rent due. Appellant was informed that the platforms had been left in the rooms, and of their cost, etc., which greatly exceeded the amount due, and requested to accept them in payment of it; and, although he did not expressly agree to do so, he did not refuse, but took time; and it does not appear, from the evidence, but that he has since retained them. Had he not intended to accept them as offered, he should have notified those representing the lodge, that they might have made some other disposition of them. His silence implies assent, and the jury might well have found therefrom that he had been paid.

But, again, the replication to the fourth plea admits the receipt of the rent falling due under the new lease, and only denies that it was in full discharge of the former lease, which the jury have found against appellant. This admission concludes him under the new lease, the only effect of the protestation being, that in case the party making it succeeds in the

point to be tried, he thereby saves to himself the liberty of disputing in *any other* suit the truth of the allegation which is protested against. 1 Chitty's Pleading (7th Am. Ed.), 649–50.

We see no sufficient reason for disturbing the judgment below, and it will, therefore, be affirmed.

*Judgment affirmed.*