## O'Brien v. Bunn.

*Lease—Covenants against assigning and underletting—Covenant to use premises as a store and dwelling-house—Vacation by lessee.*

1. A covenant in a lease that the lessee "shall not occupy the demised premises otherwise than as a store and dwelling" is broken if the lessee removes his residence elsewhere.

2. A covenant that the lessee of a store and dwelling shall not "assign the lease or under-let the premises or any part thereof" is broken if the lessee removes his residence elsewhere and permits the manager of his store to occupy the house and fill it with friends and relatives.

3. The defendant occupied the premises under a lease containing the aforesaid covenants. He removed from the property into a property some distance away, leaving the store in charge of his manager, to whom he gave the privilege of occupying the whole house. The manager thereupon took possession and filled it with friends and relatives, some as guests and others as tenants. The character of the occupation of the property changed, so that the fire marshal notified the landlord that it would be necessary, in view of the number of people living in it, to install fire-ropes on the upper floors. The landlord thereupon entered judgment in ejectment under the warrant contained in the lease. On rule to open: *Held*, that the lessee by removing from the residence and subletting it had terminated the lease and the judgment was properly entered.

Rule to open a judgment in ejectment. C. P. No. 5, Phila. Co., June T., 1924, No. 821.

*J. H. Taulane* and *S. Feldman*, for plaintiffs; *W. C. Brown*, for defendants.

SMITH, J., Dec. 5, 1924.—This action grew out of a rule to open a judgment in ejectment. The plaintiffs, on or about Nov. 13, 1916, entered into a written lease with the defendants for the premises No. 1823 South Street, Philadelphia, for the term of ten years. One of the covenants of said lease provided:

"The lessee shall not occupy the demised premises otherwise than as store and dwelling, nor shall the lessee assign this lease, nor underlet the premises or any part thereof. Any transfer by process of law shall be deemed an

assignment by the lessees and the lessees shall not do or knowingly suffer to be done any act, matter or thing whereby any policy of insurance on the demised premises shall, according to the conditions thereof, become avoided or suspended."

In the lease, in parargraph nine, there is the further covenant providing for the determination of the lease as follows:

"If the lessees shall violate any covenant or condition herein contained, or shall fail to vacate the demised premises at the end of any term, then this lease shall absolutely determine at the option of the lessors, to be signified by written notice to that effect delivered to the lessees or left upon the demised premises. And when the lease shall be so determined, any attorney may immediately appear for the lessees in an action of ejectment to be brought by the lessor in any competent court for the recovery of the demised premises and damages for the detention thereof, and therein confess judgment against the lessees, for which this agreement (or a true copy thereof) shall be a sufficient warrant; and the lessor may issue thereon all the necessary writs or process for recovering possession of said premises, with damages for detention (to be assessed at an amount equal to all unpaid rents) and costs. No determination of this lease, nor recovery of possession or damages as aforesaid, shall release the lessees from liability for the breach of any covenants herein contained."

The plaintiffs, reaching the determination that the defendants, in violation of the covenant first recited in this lease, had vacated the premises, sublet a portion of the premises to another tenant, surrendered the control of the premises to another, who had permitted it to be occupied by several families and lodgers, gave notice to the defendants, in writing, that the lease was terminated and ended by reason of the subletting on the part of the defendants. The defendants, however, refused to vacate, and the plaintiffs thereupon instituted an action in ejectment in this court, upon which judgment was duly entered and a writ of *habere facias possessionem* issued. Judgment having been entered, the defendants filed a petition and rule to open the judgment and admit the defendants into a defence. Depositions were then taken of the various witnesses.

Benjamin Bunn and Lilly Bunn, his wife, for several years had resided in and conducted a second-hand furniture business in this dwelling. In the early part of 1924 Benjamin Bunn and his family moved out of No. 1823 South Street, the place in question, to No. 2008 South Street, where they conducted a new second-hand store. Defendant and his family not only vacated the premises at No. 1823 South Street, but he also changed the place from which he voted to his new home or dwelling. In the property No. 1823 South Street the defendants left one Ellis Rowe, an employee of theirs, to conduct the second-hand business in that store, permitting him to live in the rest of the premises with his family.

The evidence is to the effect that, sometime prior to their leaving the premises No. 1823 South Street and before it was occupied by Rowe, the defendants had rented the kitchen and front room of the second floor in question to one Dan Gambel and his wife, receiving in payment therefor the sum of $7 per week.

The employee, Rowe, received as salary for managing this store for the defendants a small sum of money per week and the use of the whole house outside of the store. He admitted that he had living with him his two brothers, his mother and his father and a little baby. A representative of the Fire Marshal's office testified there were a number of other persons besides Rowe

and his relations living in the house. In addition to the family of Rowe, there was a family by the name of Eason and a family by the name of Jones. It was the office of the Fire Marshal that notified the plaintiffs that since this particular property was occupied by so many people, it would be necessary for them to comply with the regulations calling for the installation of fire-ropes on the third floor and a fire-bell.

From the evidence it is clear that, during the time that defendants occupied the premises, they had sublet a room to a man and his wife, contrary to the terms of the lease. The defendants also surrendered possession of the premises and established their legal residence elsewhere. Since the time they had vacated the premises and removed their family to another place, they had permitted their employee, Rowe, to move in and allow every part of the house to be occupied by a number of different people, some of whom were related to Rowe.

Due consideration to the language of the covenant against subletting is convincing that the parties made manifest their intentions. The parties to this lease specifically covenanted and agreed that there should be no subletting of these particular premises. It was the understanding that the defendants themselves should occupy it as a dwelling-house and store.

The meaning of the word covenant, as generally used, has been considered on many occasions by the courts and it has been defined: "That showing an intent of the parties to bind themselves to do or not to do a certain thing is sufficient:" Christine v. Whitehill, 16 S. & R. 98.

We first have the testimony of the defendants themselves that sometime before they vacated the premises they sublet to another man, Gambel, and his wife at a rent of $7 per week. This in itself would be a breach of the lease, but, in addition to that, the defendants moved from the premises in question to the new residence and there established their new dwelling-place and legal residence.

With the exception of the store which the defendants still conducted by their clerk, they turned over to him the entire house, permitting him, in turn, to do what he pleased with the premises. There is no doubt that he did as he pleased, because he permitted to live in the house his father and mother, two brothers and a child by one of his relatives, and two other families by the names of Eason and Jones.

It is thus apparent that the defendant gave up the control, regulation or sway of this property to a person not a party to the lease. It was the defendants whom the plaintiffs held responsible for the care and protection and proper maintenance of these premises. When the defendants vacated the property, there were removed the persons held responsible by the plaintiffs, and there were substituted instead an employee of the defendants and any person or persons that he desired to invite into the property occupied by him, as guests or tenants. Instead of being a dwelling-house, it became a lodging-house, and it became necessary to conform as such to all the requirements, rules and regulations of the Housing Commission and of the Fire Department. The whole character of the occupancy changed. Where formerly it had been the home of the defendants, it became a lodging-house for every relative or friend or acquaintance of the clerk employed by the defendant. This is the very thing that the covenant in the lease attempted to provide against. It would be the heighth of folly to consider with any seriousness the argument of the defendant that this occupancy by Rowe was a part of the consideration of his services; that when his employment ended also did his tenancy or occupancy end. This is not a case where a farmer employing a

farm-hand permits him and his family to occupy a small farm-house on the property during the farming season. The defendants in this case had their rights defined and conditions imposed by the terms of the lease. The testimony of the defendants themselves and the other witnesses has made manifest that there was a breach of the terms of the covenant in said lease. The only responsibility which the defendants were willing to continue to assume was the paying of the rent. In every other way they withdrew their control over the property, thus permitting their clerk, Rowe, to use or occupy the property as he saw fit.

Consideration must be given as to what was in the minds of the parties when the lease was made. Here are a man and woman who wish to rent the store and dwelling for themselves and family, and there is a specific provision in the lease that it should only be used as a store and dwelling.

When the plaintiffs restricted the use of the premises to a dwelling and store, they may have taken into consideration the fact that the use to which the defendants have now placed this building would have subjected it to a greater wear and tear, a greater depreciation in value, a greater outlay in repairs, and a greater hazard as to insurance.

Roe D. Dingley *v.* Sales, 1 M. & S. 296, Lord Ellenborough, C. J., held: "It is a parting with the exclusive possession of some part of the demised premises, whether gratuitously or for rent reserved is very immaterial to the landlord, who meant to guard against having any other than the person in whom he confided as tenant, let into possession without his consent."

Does the word dwelling-house apply to a hotel or lodging-house or any other house where anybody can have a room?

Dwelling has been defined in many dictionaries and in a great number of cases: Webster's Dictionary: "A house intended to be occupied as a residence, in distinction from a store, office or other building. Dwelling-place—place of residence."

In the interpretation of statutes covering the commission of certain crimes, such as burglary, etc., a hotel or lodging may be regarded as a dwelling-house, but in considering the word dwelling as used in a lease, it has been defined as the house where the lessee and his family shall dwell and make their permanent abode.

Some of the decisions on this subject are as follows: In the case of East Montpelier *v.* City of Barre, 79 Vt. 542, it was held that: "One's dwelling-house is the building in which he lives."

Bastian *v.* British-American Assur. Co., 77 Pac. Repr. 63: "When a policy insured a building 'while occupied as a dwelling-house,' the insurance ceased when the premises were used as a house of ill-fame."

Barnett *v.* Vaughan Institute, 119 N. Y. Supp. 45: "A dwelling-house is a house intended to be occupied as a residence, in distinction from a store, office or other building."

Agricultural Ins. Co. *v.* Hamilton, 33 Atl. Repr. 429: "A dwelling-house means a place of abode; a habitation; a house occupied, or intended to be occupied, as a residence."

Mygatt *v.* Coe, 63 N. J. L. 510: "The dwelling-house means the place where the defendant actually is living."

Massillon Engine & Thresher Co. *v.* Hubbard, 77 N. W. Repr. 588: "The dwelling-house is the place where the person has his legal residence or domicile and one in which he permanently resides."

New York Fire Dept. *v.* Buhler, 35 N. Y. 177, 182: "Dwelling-house is a building inhabited by man, otherwise a mansion, which is synonymous with

O'Brien v. Bunn.

the French word *maison*, the abode or residence of a family:" Gannett *v.* Albree, 103 Mass. 372.

Inhabitants of Jefferson *v.* Inhabitants of Washington, 19 Me. 293: "Dwelling-house means a permanent abode or residence where the person residing intends to remain, and is not synonymous with domicile."

The defendants have changed their place of abode and are now dwelling at another residence. This is clearly a breach of the covenant. Another breach of the covenant is is the subletting to Rowe.

In the case of Boston, etc., R. R. Co. *v.* Boston, etc., R. R. Co., 65 N. H. 393, it was held: "A stipulation in ordinary form against underletting would be broken by a sublease of any part of the demised premises. The extent of the premises sublet would ordinarily be immaterial."

The compensation for the use of land may be payable in money, in grain, in ore: Kunkle *v.* Philadelphia Rifle Club, 10 Phila. 52.

In the case of Marlborough *v.* Osborn, 5 Best & S. 67, it was held: "Occasionally, while a fixed rent is named by the lease, it is expressly made payable in manual services to be rendered by the lessee."

In Dills *v.* Stobie, 81 Ill. 202, it was held: "Rent may, by the terms of the lease, be payable in money, in specific articles or in the performance of services, and even if a money rent is named by the lease, particular instalments of rent may, by agreement, be paid in commodities or by the rendition of services."

The defendants, having broken the covenants of this lease by removing their residence elsewhere and subletting to another, have terminated the lease, and the judgment was propertly entered.

The rule to open the judgment is hereby discharged.