[897 NYS2d 764]

In the Matter of the Rehabilitation of Frontier Insurance Company. Alko Construction Company and Development, Inc., Respondent; Frontier Insurance Company, Appellant.

Third Department, April 1, 2010

## APPEARANCES OF COUNSEL

*Lewis & Greer, P.C.*, Poughkeepsie (*Anthony F. DeStefano* of *Mauro, Goldberg and Lilling, L.L.P.*, of counsel), for appellant.

*Vedder Price, P.C.*, Chicago, Illinois (*Michael J. Hutter* of *Powers & Santola, L.L.P.*, of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

In 1999, petitioner, an Illinois corporation, was hired as the general contractor for the construction of a high-rise condominium complex in Chicago, Illinois. Petitioner engaged Chicago Concrete Contractors, Inc. as a subcontractor to provide concrete for the project with a contract price of $5,255,155. Pursuant to the terms of the subcontract, Chicago Concrete obtained payment and performance bonds from respondent in the full amount of the contract.

In January 2001, petitioner declared Chicago Concrete in default of its obligations under the subcontract and demanded that respondent, as surety, remedy the default with respect to payments and performance. Later that month, petitioner terminated Chicago Concrete from the project. In May 2001, petitioner commenced an action against respondent, Chicago Concrete and Chicago Concrete's individual principals in the Circuit Court of Cook County, Illinois. As relevant here, the complaint alleged claims for breach of contract against Chicago Concrete and respondent and sought recovery against respondent on the bonds. Respondent filed an answer to the complaint on August 27, 2001. That same day, the New York Superintendent of Insurance commenced a proceeding in New York County for rehabilitation of respondent pursuant to Insurance Law article 74, and Supreme Court (Lehner, J.) issued a temporary

rehabilitation order which, among other things, enjoined respondent and its agents "from the transaction of its business."

Petitioner was granted a default judgment against Chicago Concrete in the Illinois action after it failed to answer the complaint. A "prove up" hearing was thereafter held on the issue of damages sustained by petitioner as a result of Chicago Concrete's breach, at which neither Chicago Concrete nor respondent appeared. After receiving testimony from one witness, petitioner's chief financial officer, the court issued a judgment against Chicago Concrete in the amount of $3,831,590.52. Subsequently, the court granted respondent's motion to stay the Illinois action pending resolution of the New York rehabilitation proceedings.

Meanwhile, in October 2001, Supreme Court issued an order of rehabilitation which appointed the Superintendent as rehabilitator and directed him to take possession of respondent's property and conduct its business. The order further provided, in relevant part, that "[a]ll persons are enjoined and restrained from obtaining preferences, judgments, attachments or other liens or making any levy against [respondent's] assets or any part thereof."

In March 2003, petitioner submitted to respondent a claim against the bond seeking to collect the amount of the Illinois judgment based upon Chicago Concrete's default, which respondent denied. Pursuant to a court order approving an interim procedure for the adjudication of claims against respondent, petitioner's claim was then referred to the Superintendent who, in a 2005 notice of determination, recommended that the claim be disallowed because it was not covered by the bond and/or was not sufficiently documented. Petitioner objected and the matter was referred to a referee. Before the referee, petitioner made a motion in limine seeking a determination that the Illinois default judgment against Chicago Concrete was conclusive against respondent or, in the alternative, considered prima facie evidence of petitioner's damages. The referee denied the motion and, following an 11-day hearing, recommended that the Illinois default judgment against Chicago Concrete be deemed unenforceable against respondent and the denial of petitioner's claims against respondent on the bond.

Respondent thereafter moved to confirm the referee's report and petitioner cross-moved to reject it. Supreme Court (Platkin, J.) concluded that, under Illinois substantive law, the judgment obtained against Chicago Concrete was conclusive and binding

against respondent. The court further held that the doctrine of collateral estoppel barred respondent from relitigating the issues of whether Chicago Concrete breached its contract and the extent of damages caused by the breach, since those issues were previously decided in the Illinois action. Supreme Court then found petitioner's total outstanding claim against respondent to be $3,258,362.38, representing the amount of damages awarded in the Illinois judgment less payments made by respondent to vendors and suppliers to whom Chicago Concrete owed money for materials used on the project. Finally, applying Illinois law, the court determined that petitioner was entitled to 5% prejudgment interest from January 1, 2007 until the date of entry of judgment against it. Respondent's subsequent motion to renew and reargue was denied by Supreme Court. Respondent now appeals from both orders.

Respondent asserts that Supreme Court misinterpreted Illinois law—specifically *Grommes v St. Paul Trust Co.* (147 Ill 634, 35 NE 820 [1893]) and its progeny—in finding that the Illinois default judgment entered against Chicago Concrete was conclusive against it. Respondent contends that, under Illinois law, a judgment on the bond must be entered against a surety before it can be held liable on the bond.

*Grommes* stands for the proposition that, where the terms of the bond do not obligate the surety to be responsible for the result of a suit against its principal, the surety must be provided with notice of the pendency of the proceedings against its principal and the opportunity to defend before it can be bound by a judgment against the principal (*Grommes v St. Paul Trust Co.*, 147 Ill at 646-647, 35 NE at 823; *see State Bank of Blue Is. v Benzing*, 383 Ill 40, 55, 48 NE2d 333, 340 [1943]; *Lesczauskis v Downs*, 286 Ill 281, 284-285, 121 NE 590, 591 [1918]). The *Grommes* principle, however, was later refined to require a judgment on the bond against the surety in order to insure "the surety of a hearing and an adjudication of the issues relevant to his liability on the bond" (*Westbrooks v Finley*, 11 Ill App 2d 428, 433, 138 NE2d 77, 79 [1st Dist 1956]). A more recent matter before the Illinois court, *Vee See Constr. Co., Inc. v Luckett* (102 Ill App 3d 444, 430 NE2d 91 [1st Dist 1981]), is particularly instructive. There, the plaintiff contractor commenced suit against its subcontractor and the surety, alleging that the subcontractor breached its contract and seeking liability on the bonds issued by the surety. Although both the surety and subcontractor appeared, only the surety filed an answer. The

plaintiff then moved for a default judgment against the subcontractor and, following an inquest, a default judgment was entered against both the subcontractor and surety. Thereafter, the surety successfully moved to vacate the default judgment against it and a hearing was held on the issues of its liability under the bond and the amount of damages that it was obligated to pay. On appeal, the Illinois appellate court concluded that the plaintiff's default judgment against the subcontractor was not conclusive against the surety (102 Ill App 3d at 447-448, 430 NE2d at 94). In so doing, the court cited the principle in *Grommes*, adding, however, that "a judgment on the bond against the surety is a requirement to hold the surety liable. In the pending matter, [the surety] vacated the default judgment against itself and a subsequent hearing was held which determined [its] liability on the bond" (102 Ill App 3d at 447, 430 NE2d at 93).

■ Thus, we conclude that Illinois law requires a judgment on the bond itself before a surety can be held liable. At the very least, Illinois law requires that a surety be given an opportunity to defend itself *against the claim under the bond* before a judgment against its principal is held to be conclusive against it (*see United States ex rel. Frontier Constr., Inc. v Tri-State Mgt. Co.*, 262 F Supp 2d 893, 897 [2003] ["Illinois law stresses the importance of allowing a surety to present defenses to its own liability on a bond"]).

In the matter before us, it is undisputed that the issue of respondent's liability on the bond was not litigated and that petitioner's Illinois action against respondent on the bond has been stayed. Under these circumstances, the default judgment rendered against Chicago Concrete cannot be conclusive as to respondent's liability on the bond (*see Vee See Constr. Co., Inc. v Luckett*, 102 Ill App 3d at 447, 430 NE2d at 93; *Westbrooks v Finley*, 11 Ill App 2d at 432-433, 138 NE2d at 79; *see also* Illinois Jurisprudence, Commercial Law § 6:68 ["a judgment on the bond against the surety is a requirement to hold the surety liable"]; Illinois Jurisprudence, Commercial Law § 6:48 [because a surety's liability on a bond is of a contractual nature and, thus, may differ from the principal's liability, "the existence of liability on the part of the principal . . . does not automatically result in the surety's liability on that same debt; the surety's contract requirements must first be satisfied"]).

█ Nor is respondent barred, by principles of collateral estoppel, from litigating its liability on the bond.[1] The equitable doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]; *see Buechel v Bain*, 97 NY2d 295, 303-304 [2001], *cert denied* 535 US 1096 [2002]; *Zinter Handling, Inc. v Britton*, 46 AD3d 998, 1000 [2007]). "The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action," and where the party against whom estoppel is sought "had a full and fair opportunity to litigate the issue in the earlier action" (*Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 349 [1999]; *see Pinnacle Consultants v Leucadia Natl. Corp.*, 94 NY2d 426, 432 [2000]; *Marotta v Hoy*, 55 AD3d 1194, 1196 [2008]). Significantly, only issues that are "actually litigated" in a prior action will be given collateral estoppel effect, and "[a]n issue is not actually litigated if, for example, there has been a default" (*Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456-457 [1985]; *see* Restatement [Second] of Judgments § 27, Comment *e*; *Matter of Halyalkar v Board of Regents of State of N.Y.*, 72 NY2d 261, 267-268 [1988]; *Pigliavento v Tyler Equip. Corp.*, 233 AD2d 810, 811 [1996]).

Here, there is no question that the issue of respondent's liability to petitioner on the bond—the primary issue resolved by the referee—was not previously litigated. It is true that respondent can only be liable under the bond in the event that Chicago Concrete defaulted in its obligations under the subcontract, and that Chicago Concrete was found in the Illinois action to have breached the subcontract. However, such issue was not "actually litigated" in the Illinois action because it was determined upon Chicago Concrete's default (*see Pigliavento v Tyler Equip. Corp.*, 233 AD2d at 811; *S.D.I. Corp. v Fireman's Fund Ins. Cos.*, 208 AD2d 706, 708-709 [1994]; *see also Stumpf AG v Dyn-*

---

1. Supreme Court properly found that the issue of whether the temporary rehabilitation order precluded respondent from defending pending litigation was raised and decided against it in *Matter of Frontier Ins. Co.* (27 AD3d 274 [2006], *lv denied* 7 NY3d 713 [2006]) and, therefore, respondent is collaterally estopped from arguing otherwise. Unlike *Matter of Frontier Ins. Co.* (*supra*), however, no judgment has been entered against respondent on the bond and the action against it has been stayed. Thus, respondent is not claiming—as it did in *Matter of Frontier Ins. Co.* (*supra*)—that the judgment *against it* is unenforceable because it was prevented from presenting a defense; rather, respondent is arguing that the issue of *its liability has not yet been adjudicated.*

*egy Inc.*, 32 AD3d 232, 233 [2006]; *Chambers v City of New York*, 309 AD2d 81, 85-86 [2003]). Thus, it has no collateral estoppel effect (*see Watrous v Autera*, 284 AD2d 792, 793 [2001]; *Pigliavento v Tyler Equip. Corp.*, 233 AD2d at 811).

Nor was the issue as to the damages recoverable under the bond necessarily decided in the Illinois action. The "prove up" hearing in that case dealt with the issue of damages sustained by petitioner as a result of Chicago Concrete's breach of contract. In that action, under Illinois law, petitioner was able to seek both actual and consequential damages flowing from Chicago Concrete's breach of the subcontract (*see Midland Hotel Corp. v Reuben H. Donnelley Corp.*, 118 Ill 2d 306, 318, 515 NE2d 61, 67 [1987]). However, as previously noted, "[t]he liability of a surety on a bond is of a contractual nature, and thus it may differ from the nature of the principal debtor's liability" (*Westbrooks v Finley*, 11 Ill App 2d at 432, 138 NE2d at 79; *see Wright v Loring*, 351 Ill 584, 588, 184 NE 865, 866 [1933] [finding that "the liability of a surety cannot be extended by mere implication nor imposed beyond the express terms of his contract"]). Here, the terms of the bonds at issue do not obligate respondent to be responsible for the result of a suit against Chicago Concrete; rather, the performance bond issued by respondent expressly limits its liability to "the reasonable cost of completing performance of the subcontract," after crediting the balance of the subcontract price.[2] Notably, the record strongly indicates—and the referee ultimately found—that a significant portion of the damages claimed by petitioner in the Illinois action constituted delay damages, such as lost profits, and damages sustained by the owner, which are not recoverable by petitioner under the terms of the bond (or, for that matter, under its contract with the owner). For these reasons, we further conclude that Supreme Court erred in finding that respondent was bound by the Illinois judgment under the principle of collateral estoppel.

We now turn to the referee's findings, which Supreme Court did not address, having concluded that petitioner's challenges to the referee's report had been rendered moot by its determination. Since Supreme Court is vested with discretion to "confirm or reject, in whole or in part, the . . . report of [the] referee"

---

2. Under the terms of the bond, the "balance of the subcontract price" means the "total amount payable by [petitioner] to [Chicago Concrete] under the subcontract and any amendments thereto, less the amounts . . . properly paid by [petitioner] under the subcontract."

and may "make new findings with or without taking additional testimony" or "order a new trial or hearing" (CPLR 4403), we deem it prudent under the circumstances to remit the matter to Supreme Court to address the merits of petitioner's objections to the referee's report.

Respondent's remaining contentions are rendered academic in light of our determination.

CARDONA, P.J., KAVANAGH, McCARTHY and EGAN JR., JJ., concur.

Ordered that the order entered December 24, 2008 is reversed, on the law and the facts, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Ordered that the appeal from the order entered July 7, 2009 is dismissed, as academic, without costs.