## CHICAGO, B. & Q. R. CO. v. DOCKERY et al.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1912.)

No. 3,518.

1. DAMAGES (§ 80*)—LIQUIDATED DAMAGES—PENALTY—CONSTRUCTION OF CONTRACT.

Where a contract leaves the intention of the parties in doubt as to the amount to be paid for its breach, and the amount specified therein is beyond all reasonable proportion to the damages that may actually be sustained, the contract will be construed to provide for a penalty only, though the amount is specified as liquidated damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 170–175; Dec. Dig. § 80.*]

2. DAMAGES (§ 76*)—LIQUIDATED DAMAGES—PENALTY—CONSTRUCTION OF CONTRACT.

Whether a case falls within the rule that where the subject-matter of a contract is of uncertain value, or where the damages to be paid for its breach are incapable of definite ascertainment by any fixed rule of law, the amount stipulated will be construed as liquidated damages, depends on the particular facts.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 154, 155, 176; Dec. Dig. § 76.*]

3. DAMAGES (§ 78*)—LIQUIDATED DAMAGES—PENALTY—CONSTRUCTION OF CONTRACT.

Where there are several agreements in a contract, the damages for nonperformance of some of which are readily ascertainable and for others not, and one sum is named as damages for a breach of any of them, the sum will be regarded as a penalty for the breach of any single stipulation.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by Thomas J. Dockery and another against the Chicago, Burlington & Quincy Railroad Company. There was a judgment for plaintiffs, and defendant brings error. Reversed and remanded for new trial.

J. G. Trimble (W. P. Hall and Campbell & Ellison, on the brief), for plaintiff in error.

Edward Higbee (Higbee & Mills, on the brief), for defendants in error.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. This action is by the defendants in error, who will be called the plaintiffs, to recover of the Railroad Company $5,000 as liquidated damages for an alleged breach of a contract made by its predecessor to maintain a depot and stockyards or pens upon land acquired for that purpose from the remote grantor of the plaintiffs, with whom said contract was made. The defendant may be considered as the company with whom the agreement was made, for

it assumed the obligations of its predecessor. The cause was tried to the court without a jury, and resulted in a judgment for the plaintiffs for the full amount claimed. The defendant brings error.

The facts are substantially as follows: In 1902, the defendant's predecessor, the Iowa & St. Louis Railway Company, was building a railroad through the county of Adair in the state of Missouri, and over or through a body of lowland in the valley of the Chariton river in said county containing some 2,000 acres owned by one Hilbert. In consideration of a right of way over such land, the Railway Company agreed to pay Hilbert $2,250; and to build the dump or grade of the road at least four feet above the level of the surface of the land; also to build upon the right of way, or lands adjacent thereto a depot and stockyards or pens, and maintain the same for a period of 10 years after they were completed. May 26, 1902, Hilbert made a deed to the company of a strip of land 100 feet wide through said premises, as a right of way, the strip containing about 18 acres; and later, another strip 150 feet wide and 1,325 feet long west of, and adjacent to, the right of way upon which to build the depot and stockyards. The right of way deed, after reciting the consideration of $2,250, contains an agreement, the material parts of which are as follows:

"As a further consideration the second party (the Railway Company) agrees and obligates itself, its successors and assigns, to erect and maintain a solid grade of uniform height of four feet above the level of the surface of the aforesaid right of way, the same to be built solid from the creek in Adair county, known as 'Blackbird creek' through said premises without any opening therein (for approximately two and one-half miles); and where said grade on the east side thereof touches the creek, a solid strip of earth shall be left for a distance of one hundred feet from the center of the channel of said creek without any openings therein, and be maintained by the company. * * * The said first party, his heirs or assigns, shall have the right at any time to join said grade on the east with a levee of the same height and connect thereto; and the party of the second part agrees and obligates itself, its successors and assigns, to built a depot to cost not less than $500 and stockyards and pens, and complete the same within one year from the date of the deed, and maintain said stockyards and station for a period of ten years from the time said stockyards are erected; and in the event that any of the conditions herein named are not fulfilled and kept by said second party, then said second party, its successors and assigns shall pay the said first party liquidated damages (or to his heirs or assigns) in the amount of five thousand dollars ($5,000), which said sum of $5,000 is hereby made a lien and charge upon the aforesaid lands herein conveyed. * * * The second party further agrees to put in all necessary road or gate crossings over its track or roadbed at such points or places as the first party or his heirs and assigns may deem necessary through the aforesaid premises."

The Railway Company constructed the embankments and grade of the road as stipulated; and shortly after built a depot, and stockyards or pens as agreed, and completed them about February 1, 1903, named the station Hilberton, and placed an agent in charge thereof. The depot was maintained with an agent in charge until June 14, 1904, when the agent was removed, because of insufficient receipts of the station to maintain him there, the station closed, and the records removed to and placed in charge of an agent at Collinsville, a station about two miles distant from Hilberton, and the account of all

freight shipped to and from Hilberton thereafter was kept at the Collinsville station. Some time in 1903, a store building and small residence were constructed near the depot, and a stock of goods placed in the store building by some one for sale at retail. No other buildings, except the depot, were ever erected at that place. The business of the store was not profitable, and the goods were removed in 1905 or 1906, and the store building moved away about a year after. In February or March, 1907, the company removed the depot building and stockyards; and only three or four cars of live stock and some hay and wood were afterwards shipped from the station. The receipts of the station during 1903 and 1904 were about $925. Of this amount less than one-fourth inured to the benefit of the company, the other portion going to other roads connecting with the defendant's road some 6 and 26 miles, respectively, from Hilberton.

October 12, 1904, four months after the removal of the agent from, and the discontinuance of the railway office at, Hilberton, Hilbert made a deed of assignment under the Missouri statute conveying this body of land, and other lands and personal property, to an assignee for the benefit of his creditors, and excepted from such conveyance the right of way granted to the Railway Company. In August, 1905, the assignee under order of court sold the assigned property, and the plaintiffs purchased 1,840 acres of the land, outside the right of way, for $16 an acre. Most of the land is subject to frequent overflow from the river or creek, which destroys or seriously damages the crops that may be growing thereon. The railroad is built on the lowest part of the land, and its embankment or grade prevents to some extent its overflow.

In March, 1909, the plaintiffs brought this action to recover of the defendant, as liquidated damages, the $5,000 stipulated in the right of way deed of Hilbert, because of its failure to maintain the depot and stockyards at Hilberton as it had agreed. No evidence was offered of any damage sustained by the plaintiffs because of such failure.

The defendant maintains: (1) That the $5,000 is a penalty only, and that in the absence of any proof as to the amount of damages sustained by the plaintiffs, no recovery can be had beyond nominal damages; and (2) that inasmuch as the station was closed before Hilbert made his deed of assignment for the benefit of creditors, he or his assignee, and not the plaintiffs, would be entitled to recover the damages, whatever they are.

The principal question for determination is: Was the $5,000 stipulated in the right of way deed of Hilbert to be paid by the company, intended as and for liquidated damages should it fail to perform *any* of its agreements therein contained, or was it intended as a penalty to cover such damages as Hilbert or his grantees might sustain because of such failure?

[1] It is the contention of the plaintiffs that the deed upon its face shows that the $5,000 was intended as and for liquidated damages because it is specified as such, and they rely mainly upon the case of the Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22

Sup. Ct. 240, 46 L. Ed. 366, in support of that contention. It is true that one of the syllabi in that case reads:

"The naming of a stipulated sum to be paid for the nonperformance of a covenant is conclusive upon the parties in the absence of fraud or mutual mistake."

But the opinion does not sustain the rule thus broadly stated, for it clearly appears therein that the question is to be determined from the meaning of the contract fairly construed in the light of its subject-matter and the circumstances under which it was made. It then holds that the agreement made by the parties fixing the value of the boat, about which that controversy arose, at $75,000 to be paid to its owner if the boat was not returned, was conclusive as between them upon the question of its value. The syllabus might indicate that in *all cases* an amount stipulated to be paid as liquidated damages for the breach of a contract is conclusive upon the amount of the recovery for such breach, but the opinion does not so hold; and the general rule is that, if the amount stated is denominated as "liquidated damages" or as a penalty, it is not conclusive, and if the contract leaves the intention of the parties in doubt as to the amount to be paid for its breach, and the amount specified is beyond all reasonable proportion to the damages that may actually be sustained, the contract will be construed as a penalty only and not as liquidated damages, though it be specified as such. McCall v. Deuchler, 174 Fed. 133, 98 C. C. A. 169; Union Pacific R. R. Co. v. Mitchell-Crittenden Co. (C. C. A.) 190 Fed. 544–545, and the cases there cited; Scofield v. Tompkins, 95 Ill. 190, 35 Am. Rep. 160; Foley v. McKeegan, 4 Iowa, 1, 66 Am. Dec. 107; McIntire v. Cagley, 37 Iowa, 677–678; note 1 Am. Dec. 331; and the English and American cases cited in 6 Eng. Rul. Cas. p. 554 et seq.

[2] In some cases it is held that if the subject-matter of the contract is of uncertain value, or if the damages to be paid for its breach are incapable of definite ascertainment by any fixed rule of law, the amount stipulated will be construed as settled or liquidated damages. Whether or not a case falls within this rule must of course depend upon its particular facts.

[3] The authorities also quite generally hold that, where there are several undertakings or agreements in a contract, the damages for the nonperformance of some of which are readily ascertainable, and for others not, and one sum is named as damages for a breach of any of them, such sum will be regarded as a penalty only, and not as liquidated damages for the breach of any single stipulation. Bignall v. Gould, 119 U. S. 495, 7 Sup. Ct. 294, 30 L. Ed. 491; McCall v. Deuchler, above; Trower v. Elder, 77 Ill. 452; Foley v. McKeegan, 4 Iowa, 1, 66 Am. Dec. 107, and the cases cited.

With these rules in mind the contract in question may be considered.

The agreements to be performed by the defendant, in addition to the payment of $2,250 for the right of way, are: (1) To erect and maintain a solid grade of uniform height of at least four feet above the level of the surface of the right of way, without openings therein

for some 2½ miles; (2) to leave a solid strip of earth 100 feet from the center of the channel of Blackbird creek, to which the grantor shall have the right to attach a levee of the same height; (3) to put in the required gates and crossings for passageways across the railroad; (4) to build a depot to cost not less than $500; (5) to build stockyards and pens; and (6) to maintain the depot and stockyards for a period of 10 years after they shall be built. And in the event that any of said conditions are not fulfilled and kept by the company, then its successors and assigns shall pay to the first party, or to his heirs or assigns, liquidated damages in the amount of $5,-000, which said sum is made a charge upon the lands conveyed for the right of way.

There are at least six things which the company by accepting this deed agreed to do; and for its failure to "fulfill and keep" any of them it is to pay as "liquidated damages" $5.000. Was it intended by this instrument, fairly construed in the light of the circumstances under which it was made, that for a failure on the part of the company to perform *any* of these agreements that it should pay to the grantor $5,000 without diminution? We think not. The body of land over which the road was built is low land in the valley of the Chariton river and near to Blackbird creek in Adair county, and subject to frequent overflow from those streams. There is no evidence as to which of the agreements was regarded as of the most importance as to this land or to its owner: but it is obvious they were of different values. The company has performed and kept all of them except that to maintain the depot and stockyards for the full period of 10 years. If it had maintained these for the period of 9½ years, and then removed them, would it be seriously contended that it was the intention of the parties in making this contract that defendant should pay $5,000 for failing to maintain them for the remainder of the 10 years? Or, if the company had maintained the depot and discontinued the stockyards and pens a few months before the expiration of the time stipulated, or if it had refused to put in the requisite crossings and gates for passageways over the railroad, would the company in either of such events be liable for the full $5,000? Clearly not, and yet that is the ultimate result to which the contention in behalf of the plaintiffs, if it is sound, unavoidably leads. Counsel for the plaintiffs do not contend that defendant agreed to maintain an agent in charge of the station, or that a breach of the agreement occurred when the agent was removed. If a depot building was all that was necessary to protect the plaintiffs from damage, one to cost $500 was all that was required under the terms of the agreement; and if the maintenance of stockyards without an agent would have been a performance upon the part of the company, it is obvious a small amount would have replaced them; and though there is no evidence of their cost, there would have been little or no difficulty in showing their value under the ordinary rules of evidence.

On the other hand, if the 2½ miles of embankments should be washed away and not replaced, or maintained at the height required, the damages to the landowner might possibly be even more than $5,-000.

195 F.—15

Looking at the situation as it existed when this contract was made, we are of opinion that it was not then the intention of the parties to consider the $5,000 as "liquidated damages" for a failure on the part of the company to perform each of its agreements; but that it was intended as a penalty to insure the performance of them all, and to pay only such damages as the grantor might sustain within said amount, because of a breach of any of them.

Whether the plaintiffs, or the grantor, Hilbert, would be entitled to recover the actual damage, if any there be, for the failure to maintain the station and stockyards, we do not determine, as there must be a new trial.

The judgment of the Circuit Court is reversed, and the cause remanded to the United States District Court for the Eastern District of Missouri, with directions to grant a new trial.

It is ordered accordingly.