STOTT REALTY CO. *v.* UNITED AMUSEMENT CO.

1. LANDLORD AND TENANT — EVICTION — RENT — TERMINATION OF LEASE.

   A tenant's obligation to pay rent ceases upon termination of his right to occupancy of the land upon eviction by the landlord.

2. SAME—CONTRACT FOR RENT—RE-ENTRY—ACTION.

   It does not necessarily follow from the fact that a landlord cannot maintain an action for rent after eviction of the tenant that the parties may not by contract obligate themselves in such manner that an action technically upon the covenant to pay rent may not survive re-entry, and such contracts are lawful and enforceable.

3. SAME—LEASE—DEFAULT — EVICTION — BREACH OF LEASE — RE-ENTRY—REMEDY—DAMAGES.

   Where a lease provided that in case of default the lessor might re-enter and repossess the premises and deduct from the sum deposited in the lessor's hands as security all sums due the lessor and bring action for and collect all damages sustained on account of the breach, and that the remedies of the lessor should be cumulative, re-entry and eviction for such default was not a bar to an action to recover damages for such breach.

4. SAME—DEFAULT—EVICTION—RE-ENTRY—DEMAND—WAIVER.

Where a lessor peaceably re-entered upon, and evicted a sublessee from, the leased premises after default as to certain provisions of the lease for more than thirty days, and the lease provided that the lessor might, in case of default in any of its provisions for thirty days, re-enter and repossess the premises and remove and put out the lessee, and that the lessee expressly waived demand for possession, such re-entry and eviction by the lessor was lawful.

5. PLEADING—ADMISSIONS—COURT RULES.

Where a sublessee, defendant in an action for damages for breach of covenant of a lease, based its defense upon an eviction by the plaintiff as lessor and in its pleadings set up a notice of forfeiture of the lease because of such breach by the lessor and its surrender of the premises pursuant to such notice, *held*, that this was an admission by defendant under Circuit Court Rule 23, § 6, and plaintiff did not waive the defaults.

Error to Wayne; Chester, J., presiding. Submitted January 17, 1917. (Docket No. 130.) Decided April 9, 1917. Rehearing denied June 1, 1917.

Assumpsit by the Stott Realty Company against the United Amusement Company for rent. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Miller, Smith, Canfield, Paddock & Perry,* for appellant.

*Robert M. Brownson,* for appellee.

On the 31st day of January, 1912, the plaintiff was the owner of lot No. 7 and the southerly one-half of lot No. 8 and the vacated 10-foot strip in front as decreed by Wayne circuit court May 6, 1901, in block 7 of the Governor and Judges Plan on the southwesterly side of Broadway, formerly Miami avenue. This property has a frontage of 98.47 feet on Broadway, a depth of 110 feet, and was worth $200,000. On this day

plaintiff entered into a lease of these premises with Benjamin Jacobson and Philip Gleichman. This lease contains 25 paragraphs. We shall recite only such provisions as are important to an understanding and decision of the case. By the terms of this lease the plaintiff agreed to erect a theater building on the premises in accordance with plans agreed upon, and Jacobson and Gleichman agreed to rent said premises for a period of 10 years and to pay in monthly installments an annual rental of $24,640, the term to begin August 15, 1912, or when the building was completed, if at a later date. The plaintiff erected the theater building at a cost to it of over $150,000, and the same was ready for occupancy January 1, 1913. By the terms of the lease Jacobson and Gleichman were to furnish certain equipment and furnishings, enumerated in the lease, and they agreed to pay cash or its equivalent therefor; this in order that there should be no liens or incumbrances on the property. The lessees agreed to, and did, deposit with the lessor the sum of $24,000 to be kept by it until the end of the term, upon which it should pay 5 per cent. interest, the lessees agreeing that the lessor might deduct from said sum damages for breach of the agreement. The lessees further agreed to keep the property insured against loss or damage by fire; they also agreed to insure and keep insured the payment of all rentals and other sums due to the lessor from the lessees in responsible company or companies, in such amount as lessor might require. The lease also contained a similar provision with reference to indemnity or casualty insurance and boiler and elevator insurance. There was a clause which prohibited the giving of immoral shows, and no burlesque shows should be produced in the theater. Section 20 of the lease was as follows:

"This lease is made upon the express condition that the lessees shall punctually perform all their cove-

nants and agreements as herein set forth, and if the rents as aforesaid, or any part thereof, shall be in arrears and unpaid for a period of thirty (30) days after becoming due, or if default be made in any of the remaining covenants of this lease and such default shall continue for thirty (30) days, then it shall and may be lawful for the said lessor to re-enter into and re-possess the said premises and the said lessees and each and every other occupant to remove and put out, and the said lessor may deduct from the sum in its hands as security all sums due it hereunder and may bring suit for and collect all additional sums which may have accrued in said lessor's favor and all damages sustained by said lessor on account of the breach of the lease by said lessees. And the said lessees hereby expressly waive demand for the payment of any rent which may become due upon this lease and for the possession of said premises."

Section 23 was as follows:

"Each and every of the rights, remedies and benefits provided by this instrument shall be cumulative and shall not be exclusive of any of said rights, remedies and benefits, or of any other rights, remedies and benefits allowed by law. If the lessor shall one or more times waive its right to insist upon the strict letter of any obligation of the lessees hereunder, no such waiver shall release the lessees in the future from the strict letter of that obligation, or of any other obligation of this lease; and if said lessor shall for any length of time waive any right or rights accruing to it under the provisions of this instrument, such waiver shall be construed strictly in favor of the lessor and shall not estop it from insisting upon any rights accruing to it under this instrument not in terms specifically waived."

On the 8th of April, 1912, said parties entered into an agreement whereby Jacobson and Gleichman were to be paid $14,000 out of the $24,000 deposited with the plaintiff pursuant to the terms of the lease, and the plaintiff was to have the balance of $10,000 as its own and gave acquittance for the first month's rent under the lease. October 30, 1912, the plaintiff, Jacob-

son and Gleichman, and defendant entered into an agreement by which Jacobson and Gleichman assigned their interest in said lease to the defendant, the plaintiff consenting thereto. The defendant assumed the liabilities of Jacobson and Gleichman in said lease, and also agreed to pay plaintiff an annual rental of $2,500 additional to the sum therein named. There was attached to this agreement a guaranty by George B. Remick, an officer of defendant, of performance by the defendant, limiting liability, however, to the sum of $10,000. March 10, 1913, Mr. Remick's guaranty was surrendered and in place of it a cash guaranty of $10,000 was deposited with the Union Trust Company as security for the payment of rent and performance of the covenants of the agreement. On the 21st of November, 1913, defendant entered into an agreement with Benjamin Fay Mills, subleasing the said premises to him and contracting to sell him the fixtures, etc. The plaintiff consented to this arrangement, but without releasing defendant from liability.

The August rent was paid by a 60-day note, which was later paid out of the guaranty fund in the hands of the Union Trust Company. The rent for September, October, and November was paid from the same source, and the balance left in that fund was used to pay the Vinton Company for work done on the theater. All of these payments of rent were made some time after they were due. Mills paid the December rent in advance, but defaulted in the January rent, and the same was not paid by any one. No rental insurance or indemnity insurance was ever taken out, although requested by plaintiff's president as early as September. Fire insurance was taken out, but upon failure to pay for the same it was canceled and it became necessary for plaintiff to take it out and pay for it. Some, at least, of the fixtures and furnishings put in by defendant were not paid for in cash or its equiva-

lent, and there were liens for the purchase price thereon. On January 16, 1914, a grossly immoral show was given at the theater, causing considerable notoriety, and on January 20th, the plaintiff served a notice on defendant declaring the lease forfeited, stating as grounds the failure to procure rental and indemnity insurance and the giving of the immoral show. On the same day plaintiff made peaceable re-entry of the premises. Thereafter the plaintiff made all reasonable efforts to obtain a tenant for the theater, but was unable to secure one, and finally entered into a contract or lease with Bertram C. Whitney, which resulted in the receipt of no income from the theater. There were some subtenants of store property in the building who paid plaintiff their rent after the re-entry, but this was the only income.

This suit was commenced July 14, 1914. The declaration counted on the lease and the breach of the covenant to pay rent and other covenants contained therein. The defendant pleaded the general issue, but later amended by giving notice thereunder that it had been given the notice of January 20th, that at the same time plaintiff re-entered said premises, and that defendant in compliance with the notice vacated and surrendered the said premises, and therefore there was no consideration for the demands set forth in the declaration. The trial court directed a verdict for the plaintiff for $15,769.26, which was made up as follows: Rent from January 1 to 20, 1914, $1,507.78; water taxes paid by plaintiff $52.82; fire insurance to July 1, 1914, $125; care of property paid by plaintiff $174.87; damages for breach of covenant to pay rent $14,323.84—making a total of $16,809.31, from which was deducted the amount received from the subtenants, $1,675 and to which balance was added interest, bringing the amount to the figures of the directed verdict.

FELLOWS, J. (*after stating the facts*). The re-entry by the landlord, the eviction of the tenant either by the landlord or by a title paramount to his, terminates the relations of landlord and tenant, and puts an end to the right of the landlord to recover rent thereafter accruing. Rent is the amount agreed to be paid for the use and enjoyment of the land, and the occupation of the land is the consideration for it. If the right to the occupancy of the land is terminated by the act of the landlord in evicting the tenant, the obligation to pay rent ceases. *Wreford* v. *Kenrick,* 107 Mich. 389 (65 N. W. 234) ; *Kuschinsky* v. *Flanigan,* 170 Mich. 245 (136 N. W. 362, 41 L. R. A. [N. S.] 430, Am. & Eng. Ann. Cas. 1914A, 1228) ; Jones on Landlord and Tenant, § 364; 1 Underhill on Landlord and Tenant, § 394. It follows that an action by the landlord cannot be maintained for rent after eviction, but it does not necessarily follow that parties may not by their contracts obligate themselves in such a manner as that an action technically upon the covenant to pay rent may not survive the re-entry. There is nothing unlawful about such contracts, and the courts have quite uniformly enforced such provisions. It was said in the early case of *Hall* v. *Gould,* 13 N. Y. 127:

"Taking all the provisions of the lease together, it was manifestly the intention of the parties that in case of a breach by the lessee, or any one under him, of the covenant 'that he would not himself, nor would he allow any one else to make use of the premises for any kind of disreputable business, including the keeping of a retail grocery of liquors,' and a re-entry by the lessor for such breach, the lessee should remain answerable for any loss of rent to the lessor. This is necessarily involved in the provision that in case of re-entry the lessor was to relet the premises for the benefit of the lessee. This being the agreement of the parties by an instrument under their seals, providing for the exact case which has happened, I do not see upon what ground a court can refuse to hold them to

its terms. It certainly is not an illegal agreement, nor is there anything unreasonable in a lessee agreeing to completely indemnify his lessor for any injury which may arise to him by the lessee's breach of his own agreement."

In *Woodbury* v. *Sparrell Print,* 187 Mass. 426 (73 N. E. 547), it was said:

"One of the provisions of the lease on which the plaintiffs' claim is founded is as follows: 'And, in case of such determination [of the lease by the lessor for a breach of the covenants] the lessee shall be liable to the lessor for all loss and damage sustained by the lessors on account of the premises remaining unleased, or being let for the remainder of the term for a less rent than that herein reserved.' The second ground of demurrer is that the claim in the bill is for 'rent and loss of rent.' This stipulation is an agreement, which is binding as a contract in the nature of a covenant, to pay the lessors the amount of their loss or damage on account of the premises remaining unleased after a determination of the lease for a breach of the covenants. It also includes an agreement to pay for the loss, if any, on account of the premises being let at a less rent for the remainder of the term. The liability thus created is as much contractual as the obligation under the covenant to pay the rent monthly."

Speaking on this question, the supreme court of Illinois said, in the case of *Grommes* v. *Trust Co.,* 147 Ill. 634, 643 (35 N. E. 820, 822, 37 Am. St. Rep. 248):

"There is nothing illegal or improper in an agreement that the obligation of the tenant to pay all the rent to the end of the term shall remain notwithstanding there has been a re-entry for default; and, if the parties choose to make such an agreement, we see no reason why it should not be held to be valid as against both the tenant and his sureties. The guarantors in this case agreed that the tenant should pay all rents to be by him paid 'according to the terms and conditions of said lease for and during the entire term thereof.' It may not be strictly accurate or correct to call the money to be paid after re-entry rent, or to

treat the lease as in force after a re-entry. But the parties have a right to fix the amount of the rent to accrue according to the terms of the lease, as the amount of damages to be paid by the tenant in case of a breach of his covenants. It can make but little practical difference whether the sum agreed to be paid be called rent or damages. It may be regarded as damages for the purposes of this suit."

Numerous authorities might be cited to the same effect, but we content ourselves with citing the following: 1 Underhill on Landlord and Tenant, § 394; *Heims Brewing Co.* v. *Flannery*, 137 Ill. 309 (27 N. E. 286); *Edmands* v. *Drug Co.*, 191 Mass. 123 (77 N. E. 713); *Longobardi* v. *Yuliano*, 33 Misc. Rep. 472 (67 N. Y. Supp. 902); *Peabody* v. *Realty Co.*, 69 Misc. Rep. 582 (125 N. Y. Supp. 349); *Michaels* v. *Fishel*, 169 N. Y. 381 (62 N. E. 425).

If from a consideration of the entire contract we are satisfied that the defendant obligated itself to indemnify the plaintiff from any loss which might arise to it by reason of the breach of the covenants, and this notwithstanding re-entry by the landlord, then the re-entry and eviction is not a bar to this action. In considering the contract in question, it should be stated that, while the word "forfeiture" appears in one paragraph of the lease, there is no provision in it that default in any of its provisions shall work a forfeiture, or that it shall be void and of no effect, or provisions of similar purport frequently found in leases; the absence of a provision of this character is a significant fact to be considered in the construction to be given this contract.

An examination of section 20, above quoted, shows that it provides that in case of default the lessor may re-enter and repossess the premises, *and* may deduct from the sum in its hands all sums due it, *and* "may bring suit for and collect * * * all damages sustained by said lessor on account of the breach of the

lease by said lessees." The word "and" is used in each instance instead of the word "or." This of itself clearly indicates an intention of the parties to preserve to the lessor all its remedies therein named rather than giving the right to an election of one of them to the exclusion of the others, as the law might give in the absence of any provision. Section 23 also provides that the remedies shall be cumulative and not exclusive. Unless we give to these provisions of the contract the effect contended for by the plaintiff, they are meaningless. Unless we construe them as preserving the liability of the lessee for breach of the contract, notwithstanding the re-entry, they have no force, and might as well have been omitted.

If this contract had provided for a recovery of liquidated damages, it would have preserved the liability of the lessee, notwithstanding the re-entry (*Peabody* v. *Realty Co., supra*) ; if it had provided therein for the payment of such specific damages as would be recoverable for a breach of the covenant to pay rent, the liability of the lessee would have survived the eviction (*Woodbury* v. *Sparrell Print, supra*). Instead of doing either, it provided for a recovery of all damages sustained by the plaintiff on account of the breach of the lease by the lessees. We are unable to distinguish on principle the contract in the instant case from those in the cases cited.

We must consider this contract in its entirety. By its terms the plaintiff not only agreed to lease the premises for a period of 10 years, but it also agreed to, and did at an expense of over $150,000, erect thereon a building designed for a special purpose, a building which both parties must have known and understood would be available to only a limited class of tenants. The erection of such a building was one of the considerations for the covenant to pay rent. *Heims Brewing Co.* v. *Flannery, supra.*

We conclude from the provisions of this contract to which attention has been called that the lessees therein obligated themselves to indemnify their lessor for all damages occasioned by breach of the covenants of the lease, notwithstanding re-entry and eviction; the defendant having assumed the liability of the lessees is answerable in this action.

The eviction was a lawful one. The undisputed testimony shows that neither rental nor indemnity insurance had been taken out by defendant as required by the provisions of the lease, that the president of plaintiff requested the officers of the defendant that the insurance be furnished, but that the company had been in default as to these clauses for more than 30 days. The undisputed testimony also showed that defendant was in default as to other provisions of the lease, and had been for more than 30 days. No notice of the default was required by the terms of the contract. The re-entry was a peaceable one, and lawful. *Smith* v. *Loan & Building Ass'n,* 115 Mich. 340 (73 N. W. 395, 39 L. R. A. 410, 69 Am. St. Rep. 575) ; *Alexander* v. *Hodges,* 41 Mich. 691 (3 N. W. 187) ; *Pendill* v. *Mining Co.,* 64 Mich. 172 (31 N. W. 100). Defendant bottomed its defense upon the eviction, and in its pleadings set up the notice given it on January 20, 1914, and its surrender of the premises pursuant thereto. This was an admission by the defendant. Circuit Court Rule 23, § 6. The plaintiff had not waived these defaults.

There was no question of fact in the case for the jury, nor is the defendant upon this record in a position to raise this, or any question other than those already discussed. It follows that the judgment should be, and it is, affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.