Grafton, }
April 4, 1922. }

FRED H. ENGLISH, *Trustee, v.* ISRAEL C. RICHARDSON.

A trustee in bankruptcy may, at his option, assume the lease to a bankrupt tenant,
subject to all obligations and liens relating thereto valid against such debtor,
or the trustee may renounce the lease and in such case the relation of landlord
and tenant continues and the latter's discharge in bankruptcy does not release
his obligation to pay rent.

If a security given by the debtor for future rent has matured against bankruptcy
proceedings, and the trustee abandons the lease but not the debtor's interest
in the security, the trustee under section 70b of the bankrupt act acquires
such interest as the debtor retained in the security after satisfaction of the
landlord's claims secured thereby.

Where a tenant has placed a sum in the landlord's hands as security for rent
subsequently to accrue and the premises are surrendered under an agreement
that "none of his [the landlord's] rights shall be forfeited or prejudiced thereby
to the retention of" said sum, the landlord is entitled to deduct therefrom rent
theretofore accrued and also the difference between the rent for the balance of
the term and the landlord's use of the property.

ASSUMPSIT, for money had and received. Facts found by a referee.
Defendant leased the Northern Hotel at Littleton to the bankrupts
by a written lease dated May 23, 1916, for the term of two years from
its date at an annual rental of $1800 payable $150 per month on the
twenty-third day of each month following. At the time of the execu-
tion of the lease, the lessees advanced to the lessor $500, which with
its accumulations was, by the terms of the lease, to be applied on the
second year's rent. The lessees took possession and paid rent in full
up to Sept. 23, 1917, in addition to the deposit of $500.

The lessees were adjudged bankrupts on October 11, 1917, and the
trustee was appointed November 12. On November 6, the defend-
ant entered into an agreement with the bankrupts as follows: "Where-
as on the 23rd day of May, 1916, Graham & Plaisted, as partners,
took a lease of I. C. Richardson of the property in Littleton, New
Hampshire, known as the Northern Hotel, for a term of two years,
with an option of five years additional. Said lease provided for
a deposit of Five Hundred Dollars ($500.00) by said Graham &
Plaisted in said Richardson's hands, applying on the last year's rent.
Said Graham & Plaisted having gone into voluntary bankruptcy,
have surrendered all their rights under and by virtue of said lease.
It is agreed that in event of the re-occupation of the premises by said
Richardson, that none of his rights shall be forfeited or prejudiced

thereby, to the retention of said Five Hundred Dollars ($500) *in* the bankruptcy courts, or any branch hereof, shall so rule. Dated at said Littleton, N. H., this Sixth day of November, 1917.

I. C. Richardson.

Said Graham and Plaisted to be bound so far as they legally may be.

Edward J. Cummings, Att'y for Graham and Plaisted."

On the date of this agreement, the defendant took and has since held possession of the hotel. The trustee was not a party to the agreement, and had no knowledge of it until his appointment. He made no claim to the lease or any rights under it except to recover the five hundred dollars and interest. The defendant filed no set-off or counter-claim for damages for the bankrupts' breach of the lease, and filed no claim against their estate in the bankruptcy court for such damages. The referee found that the payment of $500 "was paid as rent, paid in advance. Or in other words, Graham & Plaisted had credit with Richardson to the amount of five hundred dollars plus interest thereon at four per cent from May 23, 1916, to be applied as rent."

The defendant filed a motion for judgment upon the report of the referee. Subject to his exception, the court denied defendant's motion, and on the referee's report gave a verdict for the plaintiff for $309.06, being $500, the amount of the deposit and interest, less the rent at the rate of $150 a month from September 23 to November 6, 1917. Transferred from the September term, 1921, of the superior court by *Allen,* J.

*Harry M. Morse,* for the plaintiff.

*Harry L. Heald,* for the defendant.

SNOW, J. The defendant contends that the deposit of $500 was not property vesting in the trustee under the terms of the bankruptcy act and that it, therefore, passed under the lease and the agreement of November 6; the plaintiff maintains that the defendant took no interest in the fund beyond the accrued rentals, since future rentals do not constitute a provable claim under the act. Neither position correctly states the rights of the parties.

The deposit was made with the defendant pursuant to a clause in the lease which recited that "Said Graham and Plaisted are this day paying said Richardson Five Hundred ($500) Dollars, to be applied

on last year's rent of the Northern Hotel, said Richardson allowing them Savings Bank interest on the same." It is the fair interpretation of this language that the money was deposited as security for the payment of the second, or last year's rental. The fact that the defendant does not appear to have been engaged in the savings bank business, the financial condition of the lessees as evidenced by their failure so soon to meet their obligation and the absence of evidence of any other purpose for the deposit, support this conclusion. The finding of the referee to the effect that the money was paid as rent in advance and constituted a credit with the lessor, applicable to rent, is not in conflict with this interpretation. It follows, then, that on October 11, 1917, the date of the adjudication of bankruptcy, the debtors were in possession of the Northern Hotel under an unexpired written lease, by the terms of which the accrued rental from September 23, 1917, and the future rental until the expiration of the lease on May 23, 1918, were secured by a deposit in the hands of the landlord which had matured against bankruptcy proceedings.

In the absence of a provision in the lease to the contrary, a trustee in bankruptcy may, at his option, assume the lease of a bankrupt tenant, but in that case, he takes the leasehold in the same plight as the debtor held it, subject not only to the burdens which rested upon the debtor, but also to all the valid claims, liens and equities in favor of third parties. *In re Barnhardt Coal &c. Co.*, 265 Fed. Rep. 385, 386, 387; *In re Scruggs*, 205 Fed. Rep. 673, 675; *Atchinson, Topeka & Santa Fe Railroad* v. *Hurley*, 153 Fed. Rep. 503, 509, 510; *Thompson* v. *Fairbanks*, 196 U. S. 516, 525, 526. In such event the debtor is relieved from liability for future rent. *In re Scruggs, supra*, 677; *Rosenblum* v. *Uber*, 256 Fed. Rep. 584, 588, 589; *In re Ells*, 98 Fed. Rep. 967, 968; *Watson* v. *Merrill*, 136 Fed. Rep. 359, 363. If, on the other hand, the trustee renounces the lease, the relations of the landlord and tenant subsist, and the latter's discharge in bankruptcy does not release him from his obligation to pay rent. *Watson* v. *Merrill, supra*, 363; *Rosenblum* v. *Uber, supra*, 589; *In re Scruggs, supra*, 677; *In re Ells, supra*, 968; *Dunlap* v. *Company*, 31 Am. B. R. 504; *In re Sapinsky & Son*, 206 Fed. Rep. 523, 524; s. c. 219 Fed. Rep. 57; *Shapiro* v. *Thompson*, 160 Ala. 363; *In re Roth*, 181 Fed. Rep. 667, 670; *Colman* v. *Withoft*, 195 Fed. Rep. 250, 251.

It follows that the debtors and defendant on November 6, the date of the agreement, had subsisting rights and obligations under the lease with which it was their privilege to deal (*Hubbard* v. *Gould*,

74 N. H. 25, 29; *Ramsey* v. *Fellows*, 58 N. H. 607, 609; *Towle* v. *Rowe*, 58 N. H. 394; *Lane* v. *Moore*, 59 N. H. 80), contingent, however, upon the action of the trustee, who had a reasonable time after his appointment on November 12 in which to exercise his option. *In re Rubel*, 166 Fed. Rep. 131, 133; *Fleming* v. *Courtenay*, 98 Me. 401; *United States Trust Co.* v. *Railway*, 150 U. S. 287, 299, 300; *In re Scruggs*, supra, 677; *Rosenblum* v. *Uber*, supra, 588. But these rights existed only to the extent of the property ultimately abandoned by the trustee. The trustee subsequently elected to abandon the interest of the debtor tenants in the leasehold but not their interest in the security. If, then, the debtors had any interest in the deposit which might pass to the trustee, irrespective of the leasehold, it was not subject to the agreement of November 6, but may be recovered in this action.

The defendant contends that the trustee must look to the bankruptcy act for his title and that the terms of *s.* 70a of that act, specifying estate of the debtor which vests in the trustee, are not broad enough to include the deposit. The properties enumerated in this section include " (5) property which prior to the filing of the petition he [the debtor] could by any means have transferred.". It is not perceived why the debtors in the instant case could not, any time before bankruptcy, have transferred whatever equity they had in the deposit over and above the obligation secured by it. But if there were any doubt upon this question, it is sufficient to say that the enumeration of property in *s.* 70a is not exclusive of other assets of the debtors not therein specifically defined. Section 70b provides that "all real and personal property belonging to bankrupt estates shall be appraised," etc. This and other provisions of the act show that the act was designed to cover all assets and estate of a bankrupt that can in any manner be made legally available for the payment of his debts. *In re Baudouine*, 96 Fed. Rep. 536, 539, 540; s. c. 101 Fed. Rep. 574; *In re Gailey*, 127 Fed. Rep. 538, 540. In specifying the properties of debtors which vest in the trustee, the bankruptcy act of 1898 deals in particulars, where in the act of 1867 general words were used. It is not thought, however, that they differ in meaning. Collier, Bankruptcy (10 *ed.*), 994. The statute is broad enough to include the right to redeem the property of a debtor hypothecated to secure future rentals. *Matter of Sherwood's, Inc.*, 31 Am. B. R. 769, 779; *Sanford* v. *Zimmern*, 134 N. Y. Sup. 1116.

But it is the contention of the plaintiff trustee that the defendant landlord has no interest in the deposit, because future rentals, by

reason of their contingent nature, are not provable under the terms of *s.* 63a (1) of the bankruptcy act. The sections of the act (act of July 1, 1898, *c.* 541, and its amendments) most material to the present inquiry provide: *s.* 63a. "Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by . . . an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not. . . ."; *s.* 64b: "The debts to have priority, . . . shall be . . . (5) debts owing to any person who by the laws of the States or the United States is entitled to priority"; *s.* 67d: "Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, . . . shall, to the extent of such present consideration only, not be affected by this act."

It is well settled that an unsecured claim for rent accruing after bankruptcy is not a provable debt as against the general assets of the debtor. *In re Roth, supra,* 674; *Watson* v. *Merrill, supra,* 361, 362; *In re Sapinsky & Son, supra,* 526; *Shapiro* v. *Thompson, supra; In re Rubel, supra; Colman* v. *Withoft, supra.* But where future rentals are secured by a lien upon specific property, it has been held that all of the sections of the act above cited should be construed together to give the lien effect, and that the provability of debts as applied in the case of unsecured claims under *s.* 63a is not the test of the validity of such lien. *Martin* v. *Orgain,* 174 Fed. Rep. 772, 778, 779; *Courtney* v. *Company,* 219 Fed. Rep. 57, 63. In the latter case (*pp.* 62–66), it is said in substance that the formal proof of claims required by *s.* 63a has reference for the most part, if not entirely, to unsecured claims, but that where admittedly a claim is fully secured by a lien upon property of the bankrupt, such proof is not necessary to the enforcement of the lien; that it is a familiar rule that *s.* 64b (5) recognizes and accords priority to a variety of statutory liens such as those of material men, mechanics, and laborers; that the very safeguards which *s.* 67d sets up against fraudulent liens indicate a purpose to include all classes of liens that are given and accepted in good faith for a present consideration; and that the bankruptcy act, as a whole, invests the courts with power to adjust and ultimately to allow and to enforce liens originating prior to bankruptcy and presented within the proving period according to their merits and at any time before the estate has been closed. In *Rosenblum* v. *Uber, supra,* 590, 591, in supporting a landlord's lien, the court said: "The Bankruptcy Act, under its general scheme, endeavors not to destroy legal rights either in a debt or in its security. . . . In enforcing a landlord's rights

in an equitable way, the Bankruptcy Act endeavors to protect them in the same measure and preserve to them the same advantages so far as practicable that the law gave them before bankruptcy stepped in and interfered with their operation, having regard to their nature, their superiority, their priority."

Occasion for the application of these principles has occurred most frequently in cases where state statutes have given to landlords a lien upon property situated upon the leased premises to secure rentals for a limited period. Such liens have been uniformly sustained in recent decisions. *In re Sapinsky & Son, supra; Courtney* v. *Fidelity Trust Company, supra; Lontos* v. *Coppard,* 246 Fed. Rep. 803; *Martin* v. *Orgain, supra; Fudickar* v. *Glenn,* 237 Fed. Rep. 808, 809, 810; *In re Southern Hardware & Supply Co.,* 210 Fed. Rep. 381; *Shapiro* v. *Thompson, supra; In re Varley &c. Co.,* 188 Fed. Rep. 761; *In re Keith-Gara Co.,* 203 Fed. Rep. 585; *Rosenblum* v. *Uber, supra; In re Burns,* 175 Fed. Rep. 633. Likewise, such liens created by the terms of a lease are supported by the authorities. *In re Scruggs, supra,* 676; *Martin* v. *Orgain, supra; In re Floyd Scott Co.,* 224 Fed. Rep. 987; s. c. 228 Fed. Rep. 506. So, when the tenant, pursuant to the terms of a lease, provides a surety for the payment of the rentals, it would seem that the rights of the landlord against the surety remain unimpaired by the bankruptcy of the tenant, irrespective of *s.* 16 of the act, which preserves the claims of creditors against sureties. *In re Sapinsky, supra; Whitthaus* v. *Zimmerman,* 11 Am. B. R. 314, 316, 317; *In re Curtis,* 9 Am. B. R. 286, 295. There appears to be no valid reason why the principles thus governing the liberal interpretation and equitable administration of the bankruptcy act in respect to liens and pledges for future rentals should not apply with equal, if not greater, force in cases where the security consists of cash advanced to the landlord. *Matter of Sherwood's Inc., supra,* 775.

The contract covering the deposit was one of indemnity against the loss of rent. The interest of the defendant in the security beyond the accrued rent was, therefore, only the excess of the stipulated rental, for the unexpired term, over and above the value of the use of the premises for that period. As the term had expired before the trial, no practical difficulty is encountered in determining this amount. After satisfying such claims of the defendant, there should be judgment for the plaintiff for the balance, if any, of the deposit and its accumulations.

While it follows from the foregoing that there was no error in the

denial of defendant's motion for judgment, the granting of which would have given him the full amount of the deposit regardless of his loss, yet as it clearly appears that the case was tried under a misapprehension of the legal rights of the parties, the case is returned to the superior court for such further hearing, in accordance with the principles herein stated, as justice may require.

*Case discharged.*

All concurred.