**BURNS TRADING CO. v. WELBORN et al. In re MOUNTAIN STATES THEATRE CORPORATION'S ESTATE.**

No. 1264.

Circuit Court of Appeals, Tenth Circuit.

Jan. 29, 1936.

Rehearing Denied Feb. 22, 1936.

692

Ben S. Wendelken, of Colorado Springs, Colo. (David P. Strickler, of Colorado Springs, Colo., on the brief), for appellant.

Walter M. Appel, of Denver, Colo. (Ira C. Rothgerber, of Denver, Colo., on the brief), for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

On December 7, 1928, the Burns Trading Company, as lessor, and the Mountain States Theatre Corporation as lessee, entered into a lease of the theatre portion of a building known as the Burns Theatre building, in Colorado Springs, Colorado, for a term of twenty years from December 15, 1928, for a rental of $17,000 per year, payable in equal monthly installments of $1,416.67.

Paragraphs numbered 16 and 20-½ of the lease read as follows:

"16. If Lessee shall default in the payment of rent or in the performance of any other covenant and condition of this lease and if the default in the payment of rent shall continue for 30 days after receipt of written notice of default to Lessee, or if Lessee shall continue in default in performing any other covenant and condition for a period of 60 days after receipt of written notice from Lessor to Lessee, specifying the default claimed, then Lessor may, at his option, re-enter and repossess said premises with or without process of law, and terminate this lease. And if at any time said term shall be ended at such election of said Lessor, its successors and assigns, as aforesaid, or in any other way, the said Lessee does hereby covenant and agree to surrender and deliver up said above described premises, furniture and property peaceably to said Lessor, immediately upon the termination of said term as aforesaid, and if it shall remain in possession of the same after notice of default as aforesaid, or after the termination of this lease, or in any of the ways above named, it shall be deemed guilty of a for-

cible detainer of said premises and furniture under the statute, and shall be subject to all the conditions and provisions above named, and to eviction and removal, forcible or otherwise, with or without process of law, as above stated."

"20-½. Lessee agrees to deposit with Lessor the sum of Seventeen Thousand Dollars ($17,000.00) in cash, which sum shall represent payment for the last year's rent, under the terms of this lease, to-wit: The rent for the year beginning December 15th, 1947, and ending December 15th, 1948 (exclusive for charge for heating, etc., as herein provided). Interest on said deposit at the rate of six per cent (6%) per annum shall be paid by the Lessor to the Lessee at the beginning of each fiscal year hereunder, or may be deducted by the Lessee from the installment of rent due hereunder for the first month of each fiscal year. Lessee shall make the deposit herein referred to simultaneously with the delivery to it of a bond undertaking of a responsible Surety Company or a responsible other corporation authorized under the laws of Colorado to execute and deliver the same, guaranteeing to the Lessee, its successors and assigns, the due and proper application of such deposit under the terms of this lease and the payment or allowance of interest thereon as aforesaid.

"It is understood and agreed that if said lease is at any time terminated by the Lessor for any reason on account of the failure or default of the Lessee in carrying out the terms of this lease as herein provided, that said deposit of $17,000.00 shall be retained by Lessor as liquidated damages, and Lessee shall have no further right to same, and Lessor shall not be required to pay any further interest thereon from date said lease is so terminated."

The Theatre Corporation deposited the sum of $17,000 with the Burns Company in accordance with the provisions of paragraph 20-½ of the lease.

On February 3, 1933, the Burns Company gave written notice to the Theatre Corporation of a default in the payment of rental. The notice recited the provisions of paragraph numbered 16 of the lease, and further stated:

"Now we hereby give you notice in accordance with the above covenants in regard to rent, that said default in the payment of said rent has been made by you, and that said default occurred on January 30, 1933, at which time said rent was due and payable; and we further give you notice that in the event of you disregarding this notice, or in the event that said rent is not paid pursuant to this letter, that we shall, at our option, re-enter and repossess said demised premises as of our former estate."

On February 14, 1933, the Theatre Corporation filed its voluntary petition in bankruptcy and Wilbur Newton was appointed as its receiver. The receiver occupied the demised premises until April 8, 1933. On the latter date, the Theatre Corporation was adjudged a bankrupt and Welborn, Finske, and Lowndes were appointed as trustees of the bankrupt's estate.

On March 1, 1933, the Burns Company, at the request of Finske, acting for the Theatre Corporation, extended the time to exercise the option to terminate the lease until April 1, 1933, but expressly reserved the right to exercise the option to terminate the lease and to re-enter, and repossess the demised premises, if the default continued beyond the latter date.

On March 17, 1933, the Burns Company, at the request of Finske, acting for the Theatre Corporation, made a further like extension, with a like reservation, until May 1, 1933.

The trustees occupied the demised premises until June 23, 1933. On the latter date pursuant to an order of the referee, they rejected the lease and vacated the demised premises. Thereupon, the Burns Company took possession of the demised premises and leased them to the Westland Theatre Corporation at a rental of $9,500.00 per year, or 15 per cent of the gross income of the theatre whichever should be greater. The rental for the first year under the new lease amounted to $11,880.97.

The trustees brought this action against the Burns Company to recover the amount of the deposit, less the rental due to June 23, 1933. From a judgment in favor of the trustees for $14,126.64, being the amount of the deposit plus interest accrued thereon, less the unpaid rental to June 23, 1933, the Burns Company has appealed.

■ The lease of December 7, 1928, contains no provision for a reletting for the Theatre Corporation's account. The Burns Company gave no notice to the Theatre Corporation that it was reletting the premises for the latter's account. There was

no evidence that the Theatre Corporation had notice of, or consented to the reletting. Under these circumstances we must assume the Burns Company, on June 23, 1933, elected to exercise its option to terminate the lease for default of the Theatre Corporation, pursuant to the provisions of paragraph 16, and to retain the deposit as liquidated damages under the provisions of paragraph 20-½.

█ It will be noted that paragraph 20-½ provides for the application of the deposit on the last year's rental when due, for the payment of interest on the deposit by the Burns Company, and for the giving of a bond by the Burns Company to insure the proper application of the deposit and the payment of interest thereon. It is clear from these provisions that the title to the deposit was to remain in the Theatre Corporation until it should be properly applied on rental or retained as liquidated damages on termination of the lease.

█ Prior to the amendment of June 7, 1934, 11 U.S.C.A. § 103, rent not due and payable before the bankruptcy was not a provable debt;[1] the bankruptcy of the tenant did not sever the relation of landlord and tenant; and the tenant remained liable for future rentals, unless the trustee elected to retain the lease as an asset.[2]

Therefore, when the trustees elected to reject the lease it remained in force and effect between the Burns Company and the Theatre Corporation, and the latter had the right to occupy the leased premises and was bound by all the terms and conditions of the lease, until it was terminated by the Burns Company.[3]

█ The trustees could not reject the lease and claim the deposit freed from the obligations of the lease. They succeeded only to the rights of the Theatre Corporation in the deposit, as conditioned by the provisions of the lease.[4]

Was the Burns Company, on the termination of the lease, entitled to retain the deposit as liquidated damages?

It is urged that since the lease contained a number of covenants of varying degrees of importance to be performed by the Theatre Corporation, and by paragraph 16 the Burns Company, upon continued default by the Theatre Corporation in the performance of any one of such covenants after the expiration of the notice period provided for in such paragraph, was given the right to terminate the lease, the provision for retention of the deposit in the event of such termination of the lease must be regarded as a penalty.

It is generally held, where a contract contains a number of covenants of varying degrees of importance, a provision that a fixed sum shall be paid for the breach of any one, is a penalty.[5] But for reasons we shall presently state, we do not think the principle is applicable here.

█ The test for determining whether a provision in a contract is for a penalty or for liquidated damages was stated by the Supreme Court in Wise v. United States, 249 U.S. 361, 39 S.Ct. 303, 304, 63 L.Ed. 647, as follows:

"The subject of the interpretation of provisions for liquidated damages in contracts, as contradistinguished from such as provide for penalties, was elaborately and comprehensively considered by this court in Sun Printing & Publishing Association v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366, applied in United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731, and the result of the modern decisions was determined to be that in such cases courts will endeavor,

[1] Manhattan Properties v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824.

[2] In re Sherwoods, Inc. (C.C.A. 2) 210 F. 754, Ann.Cas.1916A, 940; Watson v. Merrill (C.C.A. 8) 136 F. 359, 69 L.R.A. 719; In re Roth & Appel (C.C.A. 2) 181 F. 667, 31 L.R.A.(N.S.) 270; Rosenblum v. Uber (C.C.A. 3) 256 F. 584, 590; English v. Richardson, 80 N.H. 364, 117 A. 287, 22 A.L.R. 1302, note 1307.

[3] In re Ells (D.C.Mass.) 98 F. 967; In re Frazin (C.C.A. 2) 183 F. 28, 33 L.R.A.(N.S.) 745; Petition of Colburn (C.C.A. 1) 16 F.(2d) 780.

[4] Martin v. Siegley, 123 Wash. 683, 212 P. 1057; English v. Richardson, 80 N.H.

364, 117 A. 287, 22 A.L.R. 1302; Zartman v. First Nat. Bank, 216 U.S. 134, 138, 30 S.Ct. 368, 54 L.Ed. 418; York Mfg. Co. v. Cassell, 201 U.S. 344, 352, 26 S.Ct. 481, 50 L.Ed. 782; Hewit v. Berlin Mach. Works, 194 U.S. 296, 302, 24 S.Ct. 690, 48 L.Ed. 986; note 22 A.L.R. 1307.

[5] Seidlitz v. Auerbach, 230 N.Y. 167, 129 N.E. 461; Wilbur v. Taylor, 154 Wash. 282, 282 P. 65; Gross v. Exeter Mach. Works, 277 Pa. 363, 121 A. 195, 197; Graves v. Fitzpatrick, 127 Okl. 124, 260 P. 10, 11; Wyll v. Kent (Tex.Civ.App.) 56 S.W.(2d) 505, 509; O'Brien v. Illinois Surety Co. (C.C.A. 6) 203 F. 436; Chicago, B. & Q. R. Co. v. Dockery (C.C.A. 8) 195 F. 221.

by a construction of the agreement which the parties have made, to ascertain what their intention was when they inserted such a stipulation for payment, of a designated sum or upon a designated basis, for a breach of a covenant of their contract, precisely as they seek for the intention of the parties in other respects. When that intention is clearly ascertainable from the writing, effect will be given to the provision, as freely as to any other, where the damages are uncertain in nature or amount or are difficult of ascertainment or where the amount stipulated for is not so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression. There is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced.

"There are, no doubt, decided cases which tend to support the contention advanced by appellant, but these decisions were, for the most part, rendered at a time when courts were disposed to look upon such provisions in contracts with disfavor and to construe them strictly, if not astutely, in order that damages, even though termed liquidated, might be treated as penalties, so that only such loss as could be definitely proved could be recovered. The later rule, however, is to look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts and because adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense."

It will be noted that under the provisions of paragraph 20-½, the deposit could not be retained by the Burns Company as liquidated damages for the breach of a covenant of the lease, but only as liquidated damages upon termination of the lease.

We are of the opinion that the parties had in mind, and intended to provide, not for the damages that the Burns Company would suffer from the breach of a covenant, for which the contract gave it the optional remedy of termination of the lease, but for the loss it would incur on such a termination before the expiration of the term, because of possible delay in securing a new tenant, possible expense of alterations to suit the new tenant, possible decreased rental, and the expenses of securing a new tenant. Such damages would be the same regardless of the character of the breach invoked as a ground for terminating the lease, and they would be damages of such uncertain character that it would be difficult to ascertain and measure them accurately in money.

When the length of the term, the amount of rental, and the character of the leased premises are considered, it seems to us the amount agreed to be paid on termination of the lease was based on compensation for the possible loss and was reasonable. When the character of the damages likely to result from the termination of the lease—their uncertainty, and the difficulty of accurately admeasuring them in money—is considered, it is clear that it was appropriate for the parties to stipulate in advance, the amount of such damages. Such a stipulation protected both parties against the difficulty, uncertainty, and expense which an ascertainment thereof by judicial proceedings would likely involve.

The general rule is that a tenant is not liable for rentals accruing or damages arising after termination of the lease before the expiration of the term through re-entry by the landlord, but the parties may contract, as they did here, that the tenant shall be liable for damages arising after legal termination of the lease by the landlord.[6]

In Central Trust Co. v. Wolf, 255 Mich. 8, 237 N.W. 29, 30, 78 A.L.R. 843, the lease involved contained a provision for the payment of a deposit made by the tenant, to the landlord as liquidated damages, on termination of the lease by the landlord for breach of covenant by the tenant, sub-

---

6 Central Trust Co. v. Wolf, 255 Mich. 8, 237 N.W. 29, 78 A.L.R. 843; Longobardi v. Yuliano, 33 Misc. 472, 67 N.Y.S. 902; Barrett v. Monro, 69 Wash. 229, 124 P. 369, 40 L.R.A.(N.S.) 763; In re Homann (C.C.A. 2) 45 F.(2d) 481; Stott Realty Co. v. United Amusement Co., 195 Mich. 684, 162 N.W. 283; Underhill, Landlord and Tenant, vol. 1, §§ 369, 394.

stantially like the provision in paragraph 20-½.

The landlord terminated the lease for breach of covenant to pay rent. The tenant sued to recover the deposit.

The court in the opinion said:

"The building as constructed could be used conveniently only for a garage. * * *

"It is urged that the stipulation here falls within the rule of Noble v. Sturm, 210 Mich. 462, 178 N.W. 99, quoting from syllabus: 'A sum of money deposited by the lessees with the lessor as a guaranty for the faithful performance of all the covenants of the lease by said lessees, and, under the terms of the lease, to be retained by the lessor as liquidated damages in case of lessees' default in the performance of any of the covenants of said lease, the least as well as the most important, or the whole of them together, must be regarded as a penalty and not liquidated damages. * * *'

"But in the case at bar the sum is not payable upon any default in performance by lessee. It is payable only upon a legal termination of the lease on account of the lessee's failure to perform conditions, covenants, etc.

"Legal termination was produced here, in a usual manner, a statutory summary proceeding.

"Generally, re-entry by the lessor and surrender by the lessee in obedience to writ of restitution precludes recovering damages subsequent to eviction. But the parties may contract that the provision of the lease for damages upon termination of the lease because of default of the lessee shall survive the restitution of the premises. Stott Realty Co. v. United Amusement Co., 195 Mich. 684, 162 N.W. 283; Longobardi v. Yuliano, 33 Misc. 472, 67 N.Y.S. 902; 1 Underhill, Landlord and Tenant, § 369; Barrett v. Monro, 69 Wash. 229, 124 P. 369, 40 L.R.A.(N.S.) 763.

"It is clear that the parties here intended and agreed that the provision in question should not be cut off by the re-entry by the lessor. We are not to measure here actual damages, but to determine whether damages were stipulated. * * *

"A consideration of the term, the total to be paid, the monthly installment, the character of the premises, the whole subject-matter, including the view of damages probable on termination for default by lessee, and that the sum named is not out of all proportion to any damages that could arise, leads to the conclusion that the principle of compensation was not here disregarded. 17 C.J. p. 945; 2 Joyce on Damages, p. 1437; Note 19 Ann.Cas. page 215. And, on this record, we may class this case with a line of cases where damages are uncertain and in which the agreement of the parties is accepted as the 'most practicable mode of ascertaining the sum which will produce just compensation.'" [7]

[9] We conclude the Burns Company is entitled to retain the deposit as liquidated damages for the loss suffered from the termination of the lease before the expiration of the term.

The judgment is reversed and the cause remanded with instructions to grant the Burns Company a new trial.

[7] Other cases supporting the views we have expressed are: Barrett v. Monro, 69 Wash. 229, 124 P. 369, 40 L.R.A.(N.S.) 763; Longobardi v. Yuliano, 33 Misc. 472, 67 N.Y.S. 902; Peabody v. Richard Realty Co., 69 Misc. 582, 125 N.Y.S. 349.

Mr. Underhill in his treatise on Landlord and Tenant, vol. 1, § 369, says:

"Where it is covenanted in the lease that a sum paid to the landlord by the tenant may be retained by the former in case the tenant is dispossessed from the premises by due process of law, the sum thus to be retained is presumptively liquidated damages and not a penalty. The money deposited under such circumstances is to be retained not merely upon a failure by the tenant to pay any one instalment of rent as it becomes due, but to reimburse the landlord for the loss of all subsequently accruing instalments of rent, and such being the case it is not material whether the sum mentioned is in the opinion of the court too great or too small. It is permissible for the parties to fix upon an amount as liquidated damages for a breach of the lease by the tenant and to require him to deposit such sum in the hands of the landlord."